Good morning. May it please the Court, I'm Christopher Stender on behalf of the petitioners Nirmal and D.L. Bansel, and I'd like to reserve two minutes of my time for rebuttal. You please keep track of your time and I'll try to help, but don't hold me to it. Yes, Your Honor. This is an immigration case where the Department of Homeland Security terminated the derivative asylum benefits of the two petitioners after the principal asylum grant was terminated by the INS in 1998. This case should be remanded for three distinct reasons. First of all, this Court's more recent decision in Najjar, which was subject to our supplemental brief. Secondly, because neither the Board of Immigration Appeals nor the immigration judge considered any of the petitioners' arguments that were made at the motion level before the IJ or the BIA. And thirdly, the petitioners are not removable as charged in the notice to appear. This Court's decision in Najjar should clearly be extended to the petitioner's situation where they are derivative beneficiaries and their status was terminated by the Department of Homeland Security. The same rationale, the same logic applies from Najjar to this situation. If the regulation, as this Court has found, is ultra viris and the Department of Homeland Security has no power to terminate asylum status, in other words, only the Attorney General can do so, then certainly they don't have any authority to terminate derivative asylum benefits. And why not? There's no statutory authority. That's what basically Najjar said, that if there's going to be a termination, that termination has to be done by the Attorney General. Termination of asylum status. Right. And derivative asylum status was granted by immigration and they were awarded refugee status. I understand that, but why should this be expanded to those who happen to come as companions, so to speak? Well, it's... Because that's one of the government's arguments, isn't it? That Najjar should be constricted just to the asylum seeker who... Right. ...has been removed. Well, I think factually you have a distinction here. Just like in Najjar, the termination comes after 2003 when INS ceased to exist. The termination comes in 2005 when this Court has said that the Department of Homeland Security doesn't have the authority to terminate asylum benefits. First of all, there's a factual distinction. Secondly, it's the same regulation, it's just a different subsection of that same regulation cited in Najjar. But this subsection deals with derivative asylum benefits. So I think that for those two reasons, this case, this Court should extend Najjar to derivative asylum benefits. Is it basically, that's how they happen to be here? Yes. I mean, they are in effect, as you say, companions of the asylum seeker. Right. They've accompanied him, he got asylum, and that's how they've been able to stay. Yeah, he was granted originally, and then he had the right to apply for his wife, immediate family, his child in this case, and then they were given a refugee status under Form I-730. They entered lawfully and then were present. Then the principal is stripped, and apparently he's deported, but he's not part of these proceedings. We don't know a lot of detail about what happened in his matter. The second reason this case should be remanded is because if you look at the proceedings before the immigration judge, there's a motion to terminate by the petitioner, and the immigration judge, while it's opposed by the Department of Homeland Security, and they cite, of course, the same regulation, that's the subject of Najjar, and they simply say that this case, that the arguments made by petitioner are unavailing, and then the immigration judge adopts the position of the Department of Homeland Security in their opposition. Basically, this is a house of cards. Nobody looked at any of the arguments made by the petitioners, whether or not the notice to appear was correct, whether or not there's a proper charge, whether or not they could adjust their status. None of this is looked at. Everybody looks at the regulation and says, well, the regulation says DHS can terminate derivative asylum benefits, so there's nothing for me to consider. Nobody ever looks at anything here. Since neither the immigration judge nor the BIA made any independent analysis, and, in fact, the BIA adopts the reasoning of the immigration judge, and they say something interesting. They say they cannot find that the immigration judge erred to his ultimate conclusions. Well, his ultimate conclusion was to uphold the charge and deport the petitioners, but he doesn't really say why. He cites the DHS opposition, which cites the regulation and nothing else, and nobody considers any of the arguments, not the DHS, not the immigration judge, not the Board of Immigration Appeals. And this whole case is based on the regulation. Everybody looks at the regulation and says, that's good enough. There's nothing else to consider. So that's another reason why this case simply should be remanded for further consideration. And as I've already ---- Your position is that even though there's an adjustment of status, by the way, forgive my voice, because there's an adjustment of status application, that, in effect, whatever is done with the issue that Nijar talked about, we just automatically trail along anybody that's a derivative beneficiary on the same basis? Is that what you're saying? I'm not quite sure I understand what you mean by trail along. Okay. The derivative beneficiaries have the status they have exclusively because of the person that is the beneficiary of Nijar, okay? Yes. So they want to adjust their status. If you look at the technical language of this, they have to continue to be a refugee within the meaning of, you know, I won't bother citing the section. And arguably they're not because they have to be tied to the person from whom they derive their beneficiary or derivative status. So I guess what I'm asking is, are you saying that just ipso facto, that because there are derivatives in one sense, there are derivatives in every sense, regardless of the statute we're constrained? Well, I think if you look at what actually happened in this case with the derivatives, I think I understand your question. I'm probably going to come at it from the outside. Okay. Nobody's ever alleged that they committed any fraud, that they did anything wrong. They were who they said they were. They got proper documents. They were granted by immigration. They entered properly. They were present in the United States Congress. And I get that. But for the person from whom they derive derivative status, they wouldn't have any status in this proceeding, right? Right. But even assuming that's true, there has to be some decision-making in this process, whether or not they are eligible for something else. For example, the adjustment of status. If you look at the statute, it doesn't say that they have to be in status in order to adjust their status. Not having documents is specifically waivable under Section 209. Okay. What the Department of Homeland Security here did in their notice to appear is they charged them, we argue, under the wrong section. Had they charged them under the correct section, a waiver was available and they could adjust because they don't need to have proper documents at the time of the adjustment of status. So I think what the Department of Homeland Security wanted to do is have it kind of both ways. They charged them under improper section to avoid this argument and say that they could adjust. But whatever the purpose of doing it was, we don't know because the DHS never says why they do it, the immigration judge never analyzes it, and the Board of Immigration Appeals never analyzes it either. Given the failure of the Board of Immigration Appeals and the immigration judge really to conduct any review of the arguments that we made, and it would be our position that it's very difficult for this Court to make a reasoned analysis since they just pretty much jumped to the conclusion that So you want us to send it back and you want us to tell the BIA to do what? Well, I think this case technically could be terminated if you find that this regulation is ultra-various and there's no deportation case. Well, if you terminate it, do they have any status then? They do. They're refugees. Their I-730 is still valid because it's never been terminated. Okay. They continue to be refugees. Can they change their status? To green card holders. Yeah. To green card holders. Yes, sir. They could under Section 209. If this were terminated. Yes, they could. They could make an application with Citizenship and Immigration Service, which originally they did, but it was, again, this is what brought it all the way through these proceedings. So, yes, it is possible. But if the Court wouldn't terminate, I think the BIA should in the first instance determine whether or not NIJARA is applicable to derivative asylum beneficiaries, as in this case. Secondly, there should be some kind of reasoned analysis regarding our arguments. That never happened. And lastly, this flawed charge in the notice to appear and whether or not termination is appropriate, given the poor charge made by the government in this case, those things all should be considered by the BIA, and if they're not comfortable making those decisions, then, of course, they can consider remanding it to the Immigration Office. And you want this Court to tell the BIA to do those things? Yes, those things. Not just remand, but remand with some instruction. With instructions. Yes, that's correct. And I've got one simple factual question. Is the boy a high school graduate yet? Yes. Okay. And that affects, potentially, his status today, right? Yes. There is another application that has been made for him. It's not yet been approved. If it's approved, he may fall out of this petition. We're just waiting for CIS to make it.  Thank you, Your Honor. Good morning, and may it please the Court. My name is Greg Mack, counsel for the respondent, the Attorney General of the United States. Judge Smith, your question, I think, is the important one with respect to what does the Court want the Board to do if the case should be remanded to the Board of Immigration Appeals? There is no relief for petitioners if the case goes back to the Board of Immigration Appeals. In order to adjust their status as asylees, they have to remain refugees. They are no longer refugees because the principal asylee status has been terminated due to fraud. So, once that status of the principal asylee has been terminated, the regulations require, it's a mandatory, non-discretionary Help me with this, counsel. I get your point about the fraud, but the NEJAR issue, of course, is a separate one. It's the Ultra-Virus Act. So, you're saying if it were sent back, then the agency would simply proceed through the Attorney General to charge fraud? Right. That's correct. And you'd be back right where you started from, right? That's correct. I think what NEJAR says is Well, we don't know what we're going to do. If the wrong agency terminated the two here, the mother and the son, and it went back to the BIA, who knows what the BIA would say or do? Well, I think We can't speculate about it. If we just say, no, you're the ones that have to terminate, then when they terminate, that's another case. We could send it back without instructions. We could send it back with instructions. But whatever it is, if you terminate, we have cases, or a case, at least, that if the BIA issues an order that the IJ is supposed to order, it's no good. We send it back. Now, you could say, what's the point? The IJ is going to do what the BIA told them to do. But there's always hope that there'll be change in the country. There seems to be some consideration of changing the rules. It took seven years to order them out the first time. Who knows when you'll get around to doing it the next time, or what the law will be. Well, Your Honor, I think you would do that. I think you would remand the case in the face of what's already transpired below. If Najjar had been on the books at the time this case was originally before the immigration judge, the immigration judge would have said, well, okay, you are now in proceedings. Your asylee status has been terminated. What relief do you want? And they could have pursued whatever relief they wanted to pursue before the immigration judge. What transpired below is essentially similar to what would have happened if Najjar had been in place. The process, and I would suggest to the court, the result would have been the same. They moved to terminate this case because they considered themselves still to be asylees. The immigration judge denied that motion to terminate. They didn't seek further relief before the immigration judge, and the case went forward. So I think if you remanded the case, you would do that in the face of what's already transpired below. I think what my colleague here had suggested is the answer to that, that it may not be the same. He may be eligible now, having gone through high school and who knows what else. Things do change, and you may be right, and the BIA will do exactly what you say, but we never speculate on that. We always just say, look, if it's up to the BIA, it's up to the BIA. Aside from what might happen, I've asked your opposing counsel what he would like us to do. What would the government like us to do in recognition of Najjar? With Najjar, taking into account Najjar, I think what the court should do is say, given Najjar, the process and the result would have been the same in this case as what transpired before the immigration judge. What animated Najjar was the concern that an independent asylum officer would terminate asylum status. Well, help me with this. Are you suggesting that the fraud allegation has been approved before the immigration judge and that Najjar doesn't apply? Is that what you're saying? Najjar doesn't apply because these are derivative asylees. Najjar, in our view, applies to principal asylees. Right, I understand that. But what Najjar was concerned with was a lonely, independent asylum officer making that termination determination. Here, you have the immigration judge, a delegate of the attorney general, making that termination determination. So, if Najjar had been in place, they could have gone to the immigration judge and said, wait, we oppose the termination of our asylum status, and explained that to the immigration judge. And if the immigration judge didn't accept that, then they could have gone on and applied for relief. Okay, I understand that, but you talked about fraud. Are you suggesting that the government has proven to the IJ that there was, in fact, fraud in this case? They have proven it. They've submitted the Department of Homeland Security's letters to the petitioners with respect to the termination of the principal asylee's fraud. To be sure, in this record, there is no independent statement with respect to the determination of fraud with respect to the principal asylee. And wouldn't that be required in this case? Wouldn't the IJ fact finder, the delegate of the attorney general, need to make the determination in this case? He would have to make that determination. Our view is that the determination's already been made because that evidence was presented to him. The evidence was there, but a determination hasn't been made. I'm not questioning that that may be what the IJ will do if the IJ gets it. But so far as I can tell, there has been no finding, if you will, based upon substantial evidence by the IJ that there's fraud here. Is that correct? To be sure, the principal asylee's record was not admitted as part of the proceedings before the immigration judge. What the agency relied on before the immigration judge was a letter from the Department of Homeland Security to the petitioners with respect to saying, look, your principal asylee's status has been terminated because of fraud, therefore your status is terminated. But to be sure, there's no independent record in this case with respect to the principal asylee's determination of his case for fraud. Could the petitioners here assert some defect in the fraud allegation or challenge the fraud allegation and say, you terminated my husband, my father, on an improper, inadequate basis, and therefore we have certain rights that we still enjoy? Do you understand my question? I think they could because that's what they're alleging here, and that's what they allege below, is that you cannot terminate our status because where is the fraud? And they also say, why are we removable? Those questions were presented to the immigration judge below, and the immigration judge rejected those bases for stopping proceedings in this case. On the merits or because he was required to? Because he was required to, because he had a fraud determination with respect to the principal asylee. So there's no discretion with respect to a derivative status asylee. So he had a termination letter, and that was it? That was it. He had the letter from the Department of Homeland Security to the petitioners saying, your principal asylee's asylum status has been terminated because of fraud, therefore we're rejecting your application for adjustment of status, and then they were placed in proceedings. But to be sure, and to be clear, the principal asylee's record was not admitted as part of this case, and there was no independent objective evidence in the record with respect to his determination of his asylum status for fraud. We only have the Department of Homeland Security's statement in that letter saying his status was terminated because of fraud. And you indicated they can raise that contention, and what if they met their burden of proving that contention? What then? Could they still be removed simply upon order of the Attorney General? I doubt it because the principal asylee's case has already been adjudicated through the immigration judge, through the Board of Immigration Appeals, and already through this Court of Appeals. There are admissions of fraud with respect to the principal asylee in his case already. So that record would exist before the immigration judge. So if the immigration judge had that record again, I think fraud would be proven. And I say that pointedly. I think it would be proven because that record would certainly have to go back. But I think fraud would be established going forward as it was established already before the immigration judge. Where in the administrative record are these admissions of fraud contained? Pages 171 and 238. They are the Department of Homeland Security's, I believe, letters to the derivative asylees that the principal asylee's status has been terminated. I understand that, but I thought you said that there were admissions or proof of fraud of the principal. Oh, no. I was referring to his record both before the immigration judge, the Board of Immigration Appeals, in an independent case, and before this Court of Appeals. So his fraud has already been, I would submit, admitted to and proven all the way through this court. And that record, if on remand, could go back to the immigration judge and fraud would be proven up. So the references to page 171 and 238, what I'm going to find there is evidence of fraud that's not contradicted, right? It's the Department of Homeland Security's letters to the petitioners saying their principal asylee's asylum status has been terminated. But it doesn't have the admissions. It doesn't have his admissions. It doesn't have their admissions. That's why I want to be clear. That's got to come in before an IJ then, right? That would have to come in before an IJ, but I would submit what also would come before the IJ is the full record of proceedings before the IJ, the board, and this court with respect to the principal's asylum status. So if I'm understanding you correctly, it sounds like the government agrees. We do have to send it back. And what needs to happen is it needs to go before an IJ, and the government can put on its evidence with respect to the principal. The derivative beneficiaries of that can put on whatever they're going to put on, and we'll start all over again, basically. Just to be clear, you're asking me if I agree that it should go back? Oh, I don't say agree. If, given the circumstances of this case, you acknowledge that that's really what ultimately needs to happen to get this case resolved. Well, no, I think the court should deny the petition for review because, given that Najjar is in place, the process and the result would be the same. I certainly note the court's concern that we don't know what might happen, but I would suggest to the court the process and result would be the same because it's a mandatory nondiscriminationary determination. I understand that, but we do have a process that we have to follow. And, Your Honor, I see my time is up, but I'll respond. They received all the process that they were due because they did have a hearing before the immigration judge where they contested their removal. They contested whether they should have their asylum status terminated, and they didn't seek any relief before the immigration judge. Well, that result occurred because of the then-current view of the effect of the removal order. The counsel for the petitions talks about the potential exercise of prosecutorial discretion or the following of some mediation process. Why aren't those potential options? Those are always potential options. Opposing counsel can go to the Department of Homeland Security and pursue, most likely with respect to the minor child in this regard, they can go to the Department of Homeland Security and seek some sort of prosecutorial discretion. But we're here defending the petition for review. I understand. What is the effect, then, upon the DREAM Act and so forth, the change in the law, particularly with regard to the young man in the case? It's possible that he might receive some sort of deferral of removal if the court upholds the order of removal, some sort of deferral of removal. And that is not totally foreclosed. In other words, that is a possibility. Well, prosecutorial discretion is always an option, always a possibility, Your Honor. Judge Carr also asked about mediation. I'm sure you're familiar with the court's mediation program. Yes, Your Honor. And it has worked in some immigration cases and not in others. Do you have any particular objection to going to mediation? I don't, Your Honor. I mean, given that we have this new law with respect to Najjar, I'm, again, here urging on behalf of the Attorney General that you deny the petition. But certainly with respect to the court's mediation program, we're always receptive to the court's suggestion. And let me ask you this, and I realize you're over time, but let's assume that he becomes a beneficiary of the DREAM Act and he acquires whatever status is available. Could his mother yet again have some sort of potential derivative status as his mother and sole support, I assume, et cetera, et cetera? There's the potential for that. There would be probably a long time that that would be coming, given her status as an applicant from the sun. But that's certainly out there maybe after a long process. But not every door is totally shut. Again, we're here defending the petition. It's our view the petition should be denied because they received all the process that they were due. If the case goes back, there's always options that can be pursued, Your Honor. There may be some, from your view, very slight avenue. And I say that as I'm not the person that exercises that discretion. That would be left up to the Department of Homeland Security and the immigration judges, Your Honor. Thank you. Thank you, Your Honor. We'll give you one minute. Actually, we're going to waive my time unless the court has any questions. Thank you very much. Thank you, Mr. Carpenter.
judges: Carr, Reinhardt, Smith